UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN GULA,                              :
      Plaintiff,                    :
                         :
v.                                      :                    No. 3:12CV01718 (DJS)
                         :
KOHL'S DEPARTMENT STORES, INC.,  :
      Defendant.                    :

MEMORANDUM OF DECISION

The pro se plaintiff, John Gula ("Gula"), brought this action against the defendant, Kohl's Department Stores, Inc. ("Kohl's"), his former employer, alleging (1) employment discrimination on the basis of sex and/or national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII")[1]; (2) employment discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, et seq. ("ADEA"); (3) disparate treatment and failure to make reasonable accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA"); and (4) discrimination because of his age, sex, national origin, or physical disability in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60 ("CFEPA"). Pending before the Court is the defendant's motion for summary judgment. For the reasons discussed below, the defendant's motion for summary judgment (doc. #43) is granted in part and denied in part.

---

[1]On his "Amended Complaint for Employment Discrimination" form, Gula checked the boxes indicating that the defendant's conduct was discriminatory because it was based on "sex" or "national origin." (Doc. # 30, at 2, no. 6). Those boxes on the form are also located next to the categories "age" and "disability" and it is possible that Gula meant to indicate age and disability rather than sex and national origin. In any case, the defendant addresses Title VII sex and national origin claims in its summary judgment motion and the Court will address these claims as well.

BACKGROUND

Before reciting the facts which the Court finds to be undisputed, the Court wishes to address an issue concerning the plaintiff's filings in opposition to the defendant's motion. Under the Rules of the United States District Court for the District of Connecticut (the "Local Rules"), opposition papers must include a Local Rule 56(a)2 Statement in which the opposing party must state, in separately numbered paragraphs which correspond to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement, whether each of the facts asserted by the moving party is admitted or denied. L. Civ. R. 56(a)2.

In the Local Rule 56(a)2 Statement, each denial by the non-moving party (here the plaintiff) of a fact asserted by the moving party "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." L. Civ. R. 56(a)3. The specific citation obligation of this Local Rule "requires counsel and pro se parties to cite to specific paragraphs when citing affidavits . . . and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length." *Id.* Failure to provide these specific citations "may result in the Court deeming certain facts that are supported by the evidence admitted [by the opposing party]." *Id.*

The Local Rules require that a represented party moving for summary judgment against a pro se party serve upon that party a notice in the form set out in the Rules. L. Civ. R. 56(b). That notice advises the pro se party of the aforementioned requirements. On or around November 6, 2013, Kohl's served this notice on Gula as required by the Local Rules. (Doc. #42).

In response to Kohl's motion, Gula filed an untitled document objecting to the defendant's motion for summary judgment. This document does not comply with the

requirements of the Local Rules. The plaintiff's objection did not refer directly to any of the paragraphs in the defendant's Local Rule 56(a)1 Statement of Undisputed Facts or include any specific citation to an affidavit or other evidence that would be admissible at trial. The plaintiff did attach his sworn complaint to the Connecticut Commission on Human Rights and Opportunities as an exhibit to his objection. (Doc. # 48, at 4-7).

In its Reply in Support of Motion for Summary Judgment, Kohl's noted that it had provided Gula with the Notice to Pro Se Litigants required by the Local Rules, but that Gula had failed to file the required Local Rule 56(a)2 Statement. Gula subsequently filed what was entitled "OBJECTION TO MOTION OF SUMMARY JUDGEMENT."  (Doc #50). This document also fails to comply with the requirements of the Local Rules. Again the document Gula filed does not refer directly to any of the paragraphs in the defendant's Local Rule 56(a)1 Statement of Undisputed Facts or include any specific citation to an affidavit or other evidence that would be admissible at trial. Gula's objection contains a two page statement that includes various factual allegations. This document was signed by Gula but is not a sworn statement.

The Court subsequently provided the plaintiff with an additional opportunity to file a Local Rule 56(a)2 Statement and advised him that it was in his best interest to do so. The Court informed Gula that a failure to file a Statement that complies with the Local Rules could result in all properly supported material facts in the defendant's Local Rule 56(a)1 Statement being admitted. Despite the various notices and warnings provided to him, Gula never filed a Local Rule 56(a)2 Statement.

The Court recognizes that Gula is representing himself and that "[i]t is well established that a court is ordinarily obligated to afford special solicitude to *pro se* litigants." *Tracy v.*

*Freshwater*, 623 F.3d. 90, 101 (2nd Cir. 2010).  However, "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure." *Collins v. Experian Credit Reporting Service*, No. 3:04CV1905 (MRK), 2006 U.S. Dist. LEXIS 72020, at *3 (D. Conn. Oct. 3, 2006); *see also McNeill v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Here, Gula was warned about the consequences that could result from his failure to file a Local Rule 56(a)2 Statement, but he nonetheless did not take advantage of the additional opportunity afforded him to file the required Statement.

When considering a motion for summary judgment, a district court is not obligated "to perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials [properly] cited to it by the parties." *Morales v. New York State Department of Labor*, 530 F. App'x 13, 14 (2nd Cir. 2013) (internal quotations and citations omitted). To the extent that the defendant's factual assertions are properly supported by the evidence and the plaintiff has either failed to deny them or his denials are not properly supported by evidence, the court will deem those assertions admitted. *See* L. Civ. R. 56(a)3 ("failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted"). Given the plaintiff's pro se status, the Court will give consideration to Gula's sworn complaint to the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which was attached to his initial objection to the motion for summary judgment, in determining whether there is a genuine dispute as to any material fact.

FACTS

In October 2009 Kohl's hired Gula, who was fifty-six years old at the time, to work as a Sales Associate in the defendant's Trumbull, Connecticut store. Sales Associates are responsible for greeting and offering assistance to customers in accordance with company policy. Kohl's, which is incorporated in the State of Delaware, has more than 50 employees and is registered to do business in the State of Connecticut. On March 18, 2011, Gula was granted a medical leave of absence to May 2011 due to back fusion surgery scheduled for March 2011. Gula's physician, Dr. Kenneth Lipow, issued a letter dated May 17, 2011, stating the following:

> On Wednesday, 6/1/11, Mr. Gula will be able to return to his part-time job at Kohl's. His duties should involve very light or no lifting until he has been cleared by myself or his physical therapist. I feel he should be able to do some of his past duties with no problem.

(Doc. #45-14, at 2).

Terri-Ann Wigfield ("Wigfield") was the store manager for the Trumbull, Connecticut store while Gula was employed there; she was his supervisor and was one of the individuals responsible for coordinating Gula's return from his medical leave of absence. On May 27, 2011, Gula returned to work from his leave of absence. After he returned to work Gula informed Wigfield that he could not work more than four hours a day per his doctor's instructions. Wigfield assured Gula that he would be accommodated with regard to the number of hours he worked.

The Kohl's Employee Handbook specified that work schedules for Kohl's employees were made out approximately 10 days in advance and that associates were scheduled based on

availability and workload. On June 20, 2011, Gula submitted a form indicating he was available for work on Mondays, Wednesdays, and Fridays for four hours per day.

From the time he returned to work on May 27, 2011, until the time he submitted a revised availability form on June 20, 2011, Gula worked at Kohl's for approximately 11 hours per week.[2] From the time he submitted his revised availability form on June 20, 2011, until the end of July 2011 Gula worked at Kohl's for slightly less than 5 hours per week. In late July 2011 Gula approached Wigfield and inquired about the reduction in his work hours. Wigfield responded by saying, "we have enough people in the Men's department and we want to make you a Cashier." (Doc. # 48, at 6, ¶ 14). Gula had no experience as a Cashier and also told Wigfield that he could not perform the duties of a Cashier because of his back disability. At that point Wigfield instructed Gula to put in writing that he was resigning his position at Kohl's. By way of a letter dated August 3, 2011, Gula gave notice that he was resigning as of August 18, 2011. In his letter Gula stated, among other things, that "[t]hey [managers] tried to force me to take a P.O.S. [point of sale] position that I am unable to do physically. I cannot stand in one place for long periods of time and have to bag heavy items at a very fast pace." (Doc. # 45-16, at 2). In his letter Gula referred to himself as a disabled person but did not mention age discrimination.

On August 10, 2011, Nathan Martin, Territory Human Resource Manager for Kohl's ("Martin"), spoke with Gula about his concerns regarding lack of accommodation of his disability. Gula indicated to Martin that he wanted to return to Kohl's if his disability could be accommodated. Martin then told Gula that Kohl's had been following the current restrictions for

---

[2]This information is contained in Exhibit K to Kohl's Local Rule 56(a)1 Statement (Doc. # 45-11).

him, i.e., little to no lifting, but was willing to engage in an interactive process with him if there were additional restrictions that required an accommodation. Gula agreed to engage in an interactive process and Martin sent Gula a form for his doctor to complete in order to initiate that process.

On August 16, 2011, Martin received a completed Medical Report Form (the "Form") pertaining to Gula. The Form indicated the following restrictions: no stooping, bending, twisting, squatting, kneeling, pushing, pulling, or climbing ladders. (Doc. # 48, at 22). The Form also indicated that in an 8 hour period Gula could sit for 1 hour, stand for 2 hours, walk for 8 hours, and drive for 1 hour. (*Id.*) He would also need to reposition himself every hour. (*Id.*).

On August 18, 2011, Martin spoke with Gula and advised him that Kohl's would be able to accommodate him as Gula had requested. Martin agreed that Gula could be accommodated at the Cashier position and could bag but not stand for more than five or ten minutes. Other accommodations agreed to by Martin were no prolonged shifts as a Cashier, no use of ladders, and no shift length longer than four hours. Gula then requested that Wigfield meet with him to discuss his concerns about his schedule, and Martin arranged for Gula to return to work on Friday, August 26, 2011, which was the first day that Wigfield was available to meet with Gula.

On August 26, 2011, Gula was scheduled to work as a Greeter for four hours. His time records indicate that he worked for 3.25 hours that day. (Doc. #45-11, at 27). Gula was unable to work the full four hours as a Greeter because he "could not stand any longer because of my back." (Doc. #48, at 6, ¶ 18).  Wigfield was unable to meet with Gula that day because she was required to be on a previously unscheduled conference call with all Kohl's store managers due to the impending arrival of Hurricane Irene.  Wigfield asked another executive to inform Gula that

she would speak to him when she was free or reschedule their meeting for the following Friday, September 2, 2011, which was the next day when both Gula and Wigfield were scheduled to work in the Trumbull store.

At approximately 1:30 p.m. on August 26, 2011, Gula left a voicemail message for Martin. In the message Gula stated, "This is John. Well the bitch was too busy to see me today. I want to know what is going on with my god damn job. That self centered bitch can burn in hell with her husband."[3] (Doc. # 45-21, at 2, ¶ 2). Martin listened to the voicemail and immediately contacted Merle Mack, Territory Vice President of Human Resources, to discuss the message and seek guidance. Based on the nature of Gula's comments concerning Wigfield, Martin recommended that Gula's employment be terminated for violations of Kohl's Violence Free Workplace policy. Mack agreed with the decision to terminate Gula's employment.

That same day, and over the course of the next few days, Gula continued to leave voice messages for Martin. After his initial message, Gula called back later that day and stated that he hoped any remarks he had made about Wigfield would stay between Martin and him and would not be repeated to Wigfield. Gula further explained that he "just gets angry," and he hoped to hear back from Martin on Monday. (*Id.* at 2, ¶ 3). On Sunday, August 28, 2011, Gula left another voice message for Martin stating, "I've called you 100 times already," that he didn't know what "Ms. Witchfield" had said about him, and that if the matter did not get resolved to his satisfaction, "[s]omething big will happen on Friday."  (*Id.* at 2, ¶ 4). Friday, September 2, 2011, was Gula's next scheduled shift. Martin listened to this message on Monday, August 29, 2011,

---

[3]Wigfield's late husband had committed suicide shortly after the birth of their first child.

and immediately contacted the District Loss Prevention Manager responsible for the Trumbull

store to request additional Loss Prevention coverage for the store on September 2, 2011, and

further request that Loss Prevention provide Martin with a no-trespass notification that could be

given to Gula.

On Monday, August 29, 2011, Gula left Martin a voicemail message stating, "I don't

know where you are or where you've been but this is a crock of shit. I already have a meeting on

October 4th with the Board of Rights." (*Id.* at 3, ¶ 5). Gula left Martin two additional voicemail

messages that day stating that Martin had better call him back. Martin attempted to contact Gula

multiple times on August 29, 2011, but Gula's phone rang busy throughout the day. On that same

day, Gula sent Martin an email stating:

> Well, they blew me off just as I figured, MS wigfield was toooooo
> busy to talk this past Friday. I got stuck as [a] greeter, nice, very
> nice standing in one place for hours. I now am scheduled THIS
> Friday from 10 to 2 AND the next Saturday from 12 to 4. That's
> it about 24 hours in 2.5 MONTHS. I am scheduled as kiosk
> attendent [sic] and greeter. Tell Terri-Ann [Wigfield] to stick
> her greeter and kiosk job up her ass or some place close to it. What
> the hell happened to sales associate, is that one of Kohl's famous
> lies. Maybe this case will end up in court? A very pissed off, John gula.

(Doc. # 45-23, at 2). Martin was also advised on August 29, 2011 that Gula had been in

the Trumbull store over the weekend and had made comments to Associates that he knew

where Wigfield lived and would go see her at her residence.

On Tuesday, August 30, 2011, Martin spoke with Gula on the phone. Gula told

Martin that he had gone to the Trumbull store on the previous Friday and that Wigfield

couldn't talk to him at that time. Martin then informed Gula that Kohl's had decided to

terminate his employment due to the inappropriate phone calls and threats that Gula had

made. Martin advised Gula that he would be receiving copies of the termination notice

and the no-trespass notice that was being issued to inform Gula that he could not enter the

Trumbull store or any other Kohl's location. On that same day Martin sent Gula a written

notice of his termination via overnight mail. The notice stated that:

> Effective 8/30/11 John is released from employment for
> violation of company guidelines and violation of the
> company's Zero Tolerance Violence Free Workplace policy.
> Due to the serious nature of the threats made, John is not
> permitted to enter the Trumbull Kohl's Store or any other
> Kohl's Store. On 8/30/11 John was verbally notified that he is
> not permitted in any Kohl's Store Location, and John is being
> provided with a No Trespass notice along with this counseling
> document.

(Doc. # 45-25, at 3). The notice made specific reference to Kohl's Company Guideline

number one, "[i]mproperly treating a fellow Associate, customer or non-employee" and

number seven, "[u]se of abusive or offensive language." (*Id.* at 2). The notice also quoted

from the Zero Tolerance Violence Free Workplace Policy:

> Kohl's is committed to maintaining a workplace that is free
> from violence or threat of violence. Any actions interpreted as
> threats or that are violent in nature will not be tolerated. . . . Under
> this policy, any acts or threats that Kohl's considers to be related
> to violence will result in an immediate and firm response that
> could include termination from employment with Kohl's.

(*Id.*).

DISCUSSION

A. STANDARD

A motion for summary judgment may be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A "material fact" is one whose resolution might affect the ultimate

determination of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "accept[s] as true facts that [are] undisputed by the parties, and resolve[s] disputed facts in favor of the non-moving plaintiff where there [is] evidence to support his allegations." *Sousa v. Roque*, 578 F.3d 164, 166 n.1 (2d Cir. 2009). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Summary judgment is appropriate if, after discovery, the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (internal quotation marks omitted).

## B. TITLE VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. §2000e-2(a).

There are no factual allegations in Gula's Amended Complaint regarding his race, color, sex, or national origin. Gula merely checked the box in Paragraph 3 of his Amended Complaint asserting a Title VII claim against the Defendant. (Doc #30, at 1, ¶ 3). Although "a court must

accept as true all of the allegations contained in a complaint," a claim cannot be "supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Since Gula's Amended Complaint does not contain factual content that would allow the Court to draw a reasonable inference that Kohl's discriminated against him on the basis of his race, color, sex, or national origin, it fails to state a claim under Title VII. For that reason Koh's motion for summary judgment is granted as to Gula's Title VII claims.

## C. ADEA

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). Individuals who are forty years of age or older are protected from age discrimination under the ADEA. 29 U.S.C §631(a).

ADEA claims are analyzed under the three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Under this framework the plaintiff bears the initial burden of establishing a prima facie case of age discrimination. If the plaintiff meets this initial burden, the defendant must then articulate a legitimate, non-discriminatory reason for the adverse employment action at issue. If the defendant meets its burden, the plaintiff must show that the proffered explanation is a pretext for discrimination. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). Ultimately, "a plaintiff bringing a disparate-

treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services*, Inc., 557 U.S. 167, 180 (2009).

In order to establish a prima facie case of age discrimination, a plaintiff must show that: "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination . . . ." *Woodman*, 411 F.3d at 76 (internal quotation marks omitted).  The plaintiff's burden in establishing a prima facie case is minimal. *See Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). There is no dispute about the facts that Gula was a member of the protected class, i.e., over the age of forty, and that he was qualified for his job.

There is also no dispute that Gula's termination constituted an adverse employment action. The term "adverse employment action" encompasses a broader range of actions than termination, however. "An adverse employment action occurs when there is a 'materially adverse change' in the terms and conditions of employment. A materially adverse change must be more disruptive than a mere inconvenience or an alteration of job responsibilities, and can include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Hrisinko v. N.Y. City Department of Education*, 369 F. App'x 232, 235 (2d Cir. 2010) (internal quotation marks omitted). The facts before the Court in this particular situation support a finding of a second adverse employment

-13-

action, i.e., a significant, unwanted reduction in available work hours resulting in a corresponding significant reduction in pay. This action occurred after Gula submitted his revised work-availability sheet on June 20, 2011. For purposes of the pending motion for summary judgment the Court will consider this unwanted reduction of work hours to be a second adverse employment action.

The fourth element of the *McDonnell Douglas* prima facie case, whether the adverse employment action occurred under circumstances giving rise to an inference of age discrimination, is very much in dispute. It has been noted that the plaintiff failed to file a Local Rule 52(a)2 Statement in compliance with the Local Rules.  As previously mentioned, however, the Court will give consideration to Gula's sworn complaint to the Connecticut Commission on Human Rights and Opportunities which he attached to his initial objection to the motion for summary judgment. In his sworn complaint, Gula includes the following allegations relating to the reduction in his work hours that occurred after he submitted his revised availability sheet:

> Although I indicated that I was available to work more hours, my hours of work were significantly reduced. I inquired about the reduction in hours, and was told that there were no other hours available. This was untrue, as I saw other younger, non-disabled employees working in my department, who were normally not assigned to my area.

(Doc. # 48, at 5-6, ¶ 13). Gula has not provided any other evidence regarding his claim of age discrimination. While it is true that the plaintiff's burden in establishing a prima facie case is minimal, the Court must "distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Woodman*, 411 F.3d at 75 (internal quotation marks omitted). *See Golden Pacific Bancorp v. FDIC*, 375 F.3d

-14-

196, 200 (2d Cir. 2004) ("the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful") (internal quotation marks omitted). Gula's vague and conclusory statement that "I saw other younger, non-disabled employees working in my department" is not sufficient to support a reasonable inference of age discrimination with regard to the reduction in his work hours and pay. The allegations contained in Gula's sworn complaint are particularly deficient to support a claim under the ADEA, "which differs from other employment discrimination statutes in providing no neat fit between membership in the protected class (the focus of the first prima facie factor) and the proscribed discrimination (the fourth factor)." *Woodman*, 411 F.3d at 78.

With respect to the termination of his employment, Gula has provided no evidence that would support an inference that his termination occurred under circumstances giving rise to an inference of age discrimination. Accordingly, Kohl's motion for summary judgment is granted as to Gula's ADEA claims.

### D. ADA

Gula did not specifically plead an ADA claim in his Amended Complaint.[4]  However, in Paragraph 7, Gula alleges that his original job consisted of light lifting and sales, but that one month after his return from back surgery he was told he was going to be working as a Cashier, which was a job he could not do because it involved heavy lifting. (Doc. #30, at 2, ¶ 7). Gula

---

[4]Gula completed and filed a "Complaint for Employment Discrimination" form as his Amended Complaint. (Doc. # 30). Page 2 of that complaint form was missing from the Amended Complaint. Kohl's specifically mentioned the missing page in both its Answer to Amended Complaint (doc. # 32, at 1, ¶ 4) and  its Memorandum of Law in Support of Motion for Summary Judgment. (Doc. # 43-1, at 3). Despite these notices, Gula never filed the missing page 2.

further alleges in Paragraph 7 that after he advised Kohl's that he could not work as a Cashier, he was told he would have to resign because there were no other options available,  and that after a month of harassment by Kohl's he was fired. (*Id.*). In addition, Gula did allege one or more ADA violations in his CHRO complaint. (Doc. # 30, at 11). Therefore, this Court will interpret the pro se plaintiff's Amended Complaint as alleging violations of the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). "The term 'covered entity' means an employer . . . ." 42 U.S.C. §12111(2).   A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds . . . ." 42 U.S.C. §12111(8). Discrimination against a qualified individual on the basis of disability includes limiting the employee in a way that adversely affects his opportunities or status. 42 U.S.C. §12112(b)(1). Discrimination on the basis of disability also includes not making reasonable accommodations to a known physical limitation of an otherwise qualified individual with a disability, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such [employer]. . . ." 42 U.S.C. §12112 (b)(5)(A).

### 1. Disparate Treatment

A disparate treatment ADA claim is one alleging that an employer "treats some people less favorably than others because of their [disability]." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (internal quotation marks omitted). The *McDonnell Douglas* three-part burden-shifting framework also applies to ADA claims. *See id.* at 49 n.3. Therefore, if the plaintiff is able to

establish a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for adverse employment action, and if it is successful in doing so, the burden shifts back to the plaintiff to show that the employer's articulated reason is pretextual. *Id.*

"To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (internal quotation marks omitted). In addressing Gula's ADA claim, Kohl's does not dispute the first three elements of the prima facie case.[5] As noted in connection with Gula's ADEA claims, the facts before the Court support a finding of two adverse employment actions: (1) a significant, unwanted reduction in available work hours resulting in a corresponding significant reduction in pay, and (2) termination.  Each action will be addressed separately.

A. Reduction in Work Hours

With respect to the unwanted reduction in Gula's work hours, the evidence in the record supports the following facts: Gula was on a medical leave from March to May 2011 due to back fusion surgery. A letter from his physician stated that upon Gula's return to work, "[h]is duties should involve very light or no lifting until he has been cleared by myself or his physical

---

[5]While Kohl's argument is addressed solely to a failure to accommodate claim, these same elements, i.e., that Kohl's is subject to the ADA, that Gula was disabled within the meaning of the ADA, and that Gula was otherwise qualified to perform the essential functions of his job, also apply to a failure to accommodate claim. *See McBride v. BIC Consumer Products Manufacturing Co., Inc.*, 583 F.3d 92, 96-97 (2d Cir. 2009).

therapist." (Doc. # 45-14, at 2). After he returned to work, Gula told his supervisor, Wigfield, that per his doctor's instruction, he could not work more than four hours per day. Wigfield assured him that he would be accommodated with regard to the number of hours he worked.

On June 20, 2011, Gula submitted a form indicating he was available for work on Mondays, Wednesdays, and Fridays for four hours per day (12 hours per week). From the time he submitted his revised availability form on June 20, 2011, until the end of July 2011 Gula worked for slightly less than 5 hours per week, which is less than half of the time for which he had indicated he was available. He had been working for approximately 11 hours per week from the day he returned from his medical leave until the day he submitted has revised availability form.

Gula approached Wigfield in late July 2011 and asked about the reduction in his work hours. Wigfield responded by saying, "we have enough people in the Men's department and we want to make you a Cashier." (Doc. # 48, at 6, ¶ 14). Gula had no experience as a Cashier and further told Wigfield that he could not perform the duties of a Cashier because of his back disability. At that point Wigfield told Gula to put in writing that he was resigning his position at Kohl's.[6] On August 3, 2011, Gula gave notice that he was resigning his position at Kohl's effective August 18, 2011. In his resignation letter Gula stated that Kohl's managers "tried to force me to take a P.O.S. [point of sale] position that I am unable to do physically. I cannot stand in one place for long periods of time and have to bag heavy items at a very fast pace." (Doc. # 45-16, at 2).

---

[6]The Court reiterates that in considering a summary judgment motion it "resolve[s] disputed facts in favor of the non-moving party where there [is] evidence to support his allegations." *Sousa v. Roque*, 578 F.3d 164, 166 n.1 (2d Cir. 2009).

"[T]he burden of making out a prima facie case [under the ADA] is not onerous . . . ."

*Ben-Levy v. Bloomberg*, 518 F. App'x 17, 19 (2d Cir. 2013). It is sufficient if a plaintiff provides

evidence demonstrating "that the adverse employment action occurred under circumstances

giving rise to an inference of discrimination." *Id.* at 18-19.  A court considering a motion for

summary judgment must "draw all reasonable inferences in favor of [the non-moving] party. . . ."

*Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (internal quotation marks

omitted). The Court finds that Gula has met his minimal burden of establishing a prima facie

case of discrimination due to disability as to the significant, unwanted reduction in his work

hours that occurred after he submitted his revised work-availability sheet on June 20, 2011.

Once a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the

defendant[] to proffer a legitimate, nondiscriminatory reason for the complained of action." *Ben-

Levy*, 518 F. App'x at 19. Kohl's did not articulate a legitimate, nondiscriminatory reason for the

significant, unwanted reduction in Gula's work hours. Kohl's argument concerning an ADA claim

addresses only the second adverse employment action suffered by Gula, the termination of his

employment at Kohl's, and is couched in terms of a failure to accommodate claim, as opposed to

a disparate treatment claim. Because Kohl's has failed to overcome the presumption of

discrimination arising out of the establishment of a prima facie case, its motion for summary

judgment is denied as to Gula's ADA claim of disparate treatment with regard to the unwanted

reduction in his work hours.

B. Termination

Gula's employment at Kohl's was terminated by a notice dated August 30, 2011. Between

the time he submitted his resignation letter on August 3, 2011, and the time Kohl's issued the

termination notice, Gula was scheduled to work on one day, August 26, 2011. The schedule

called for Gula to work that day as a Greeter for four hours. Gula was unable to complete the

scheduled four hours as a Greeter because he "could not stand any longer because of [his] back."

(Doc. # 48, at 6, ¶ 18). On August 16, 2011, Kohl's had received a Medical Report Form

indicating, among other things, that Gula could stand for only 2 hours in an 8 hour period. The

Court will assume for purposes of this motion that Gula has met his minimal burden of

establishing a prima facie case of discrimination with regard to his termination.

Kohl's has satisfied its burden of articulating a legitimate, nondiscriminatory reason for

Gula's termination, i.e., "because of his abusive and threatening language directed at his

supervisor Terri-Ann Wigfield." (Doc. # 43-1, at 21). Accordingly, "the burden is on the plaintiff

to point to evidence that reasonably supports a finding of prohibited discrimination; otherwise,

the defendant is entitled to summary judgment." *Garcia v. Hartford Police Department*, 706 F.3d

120, 127 (2d Cir. 2013). Other than vague, conclusory language in his CHRO complaint that

Martin  "accused me of threatening other employees and made up other false accusations about

my behavior" and that he  "was terminated because of my physical disability," Gula has not

provided any evidence that would satisfy his burden of demonstrating that Kohls's articulated

reason for his termination was a pretext for discrimination based on his disability.

On August 26, 2011, after Wigfield was unable to meet with him due to an unscheduled

conference call regarding an impending storm, Gula left a voicemail message for Martin in which

he stated, among other things,  "Well the bitch was too busy to see me today. I want to know

what is going on with my god damn job. That self centered bitch can burn in hell with her

husband." (Doc. # 45-21, at 2, ¶ 2). On Sunday, August 28, 2011, Gula left another voice

message for Martin stating,  "I've called you 100 times already," that he didn't know what  "Ms.

Witchfield" had said about him, and that if the matter did not get resolved to his satisfaction,

"[s]omething big will happen on Friday." (*Id.* at 2, ¶ 4). Martin was also advised on Monday,

August 29, 2011, that Gula had been in the Trumbull store over the weekend and had commented

to store Associates that he knew where Wigfield lived and would go see her at her residence. On

August 30, 2011, Martin informed Gula that Kohl's had decided to terminate his employment due

to the inappropriate phone calls and threats that Gula had made.

"'The [ADA] does not require an employer to retain a potentially violent employee. Such

a requirement would place the employer on a razor's edge - - in jeopardy of violating the [ADA]

if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he

hurt someone.'" *Sista*, 445 F.3d at 172 (quoting *Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th

Cir. 1997)). The record evidence demonstrates that Gula presented as a potentially violent

employee as a result of the threatening messages he left concerning Wigfield.

The written termination notice sent to Gula cited "violation of company guidelines

[concerning treatment of fellow Associates and use of abusive or offensive language] and

violation of the company's Zero Tolerance Violence Free Workplace policy" as the reasons for

his termination. (Doc. # 45-25, at 3). Gula has not provided any evidence that would support a

reasonable inference that these cited reasons were a pretext for discrimination based on disability.

Consequently, Kohl's motion for summary judgment is granted as to Gula's ADA claim of

disparate treatment with regard to his termination.

### 2. Failure to Accommodate

In order to state a prima facie case of failure to accommodate under the ADA, the

plaintiff must show that: "(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Products Manufacturing Co., Inc.*, 583 F.3d 92, 97 (2nd Cir. 2009) (internal quotation marks omitted). As has been previously noted, Kohl's does not dispute the first three elements of the prima facie case.

With respect to the fourth element, Kohl's contends that Gula did not establish a prima facie case of failure to accommodate because he "has failed to present evidence that Kohl's refused to make reasonable accommodations" and that "Kohl's has presented substantial evidence that there were attempts to accommodate Plaintiff's physical limitations prior to any adverse action." (Doc. # 43-1, at 19). The Court does not agree with Kohl's in this regard. Gula has presented evidence that Kohl's officials, while assuring Gula that his physical limitations would be accommodated, in fact did not make such accommodations.

Following Gula's back fusion surgery, his physician issued a letter stating that upon his return to work, Gula's "duties should involve very light or no lifting until he has been cleared by myself or his physical therapist." (Doc. #45-14, at 2). Gula has provided evidence that upon his return from a medical leave relating to that surgery, Wigfield told him on more than one occasion that Kohl's would accommodate him in accordance with his doctor's representations. He has also provided evidence that, despite those assurances, Wigfield told him that Kohl's wanted to make him a Cashier, and, when Gula told Wigfield he "could not perform the Cashier duties because of [his] back disability, she told me to put in writing that I was resigning." (Doc. # 48, at 6, ¶ 15).

-22-

Kohl's also argues that it "performed a formal interactive process to try to identify Mr.

Gula's specific physical limitations." (Doc. # 43-1, at 19). This process involved the interactions

between Gula and Martin and resulted in the completed Medical Report Form that was sent to

Martin. The Medical Report Form indicated, among other things, that Gula could stand for only 2

hours in an 8 hour period. Martin subsequently told Gula that Kohl's would be able to

accommodate him. On his next scheduled work day, Gula was scheduled to work as a Greeter for

four hours. He was unable to work the full four hours as a Greeter because he "could not stand

any longer because of my back." (Doc. #48, at 6, ¶ 18).

Gula has provided competent evidence that Kohl's assured him that his physical

limitations would be accommodated, but failed to make the accommodations he required. *See*

*Peterson v. Connecticut Light & Power Co.*, No. 3:10-cv-02032 (JAM), 2014 U.S. Dist. LEXIS

80256, at *6-7  (D. Conn. June 12, 2014) ("[Plaintiff's] specific factual allegations about

statements made to her and by her are far from 'conclusory' and plainly proper for consideration

at the summary judgment stage."). At this stage of the litigation, there are material facts

genuinely in dispute as to Gula's failure to accommodate claim, i.e., whether Kohl's refused to

make reasonable accommodations and whether Kohl's engaged in the interactive process in good

faith. *See Felix v. New York City Transit Authority*, 154 F. Supp. 2d 640, 658 (S.D.N.Y. 2001)

("there is a question as to whether the [defendant] engaged in the interactive process in good

faith"). Consequently, Kohl's motion for summary judgment is denied as to Gula's ADA failure

to accommodate claim.

-23-

E. CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT

As was the case with regard to the ADA, Gula did not specifically plead a CFEPA claim in his Amended Complaint. Gula did allege one or more CFEPA violations in his sworn complaint to the CHRO, however, and it has previously been noted that page 2 of the "Complaint for Employment Discrimination" form is missing from Gula's Amended Complaint. The Court will interpret Gula's Amended Complaint as raising claims under CFEPA.

CFEPA provides in part that it shall be a discriminatory practice "[f]or an employer, by the employer or the employer's agent, . . . to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . age, sex, . . . national origin, . . . or physical disability . . . ." Conn. Gen. Stat. §46a-60(a)(1). The Connecticut Supreme Court "has determined that Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws." *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 407 (2008). Accordingly, Kohl's motion for summary judgment is granted as to plaintiff's CFEPA claims based on age, sex, or national origin, consistent with the Court's rulings on Gula's Title VII and ADEA claims.

"While certain elements of the Fair Employment Practices Act and the ADA differ, claims for violations of the Fair Employment Practices Act are analyzed under the same standards as claims for violations of the ADA." *Langello v. West Haven Board of Ed.*, 142 Conn. App. 248, 259 (2013) (internal quotation marks and alterations omitted). Beyond prohibiting the disparate treatment of employees with physical disabilities, "the legislative intent with regard to

-24-

the Fair Employment Practices Act requires 'employers to make a reasonable accommodation for an employee's disability,' despite no such language in the statute's text." *Id.* at 260 (quoting *Curry*, 286 Conn. at 415). Consistent with the Court's rulings on the ADA claims, Kohl's motion for summary judgment is granted as to the CFEPA disparate treatment claim relating to Gula's termination and denied as to the disparate treatment claim relating to the involuntary reduction in his working hours. The motion for summary judgment is also denied as to the CFEPA failure to accommodate claim.

CONCLUSION

For the above stated reasons, the defendant's motion for summary judgment (**doc. #43**) is **GRANTED** in part and **DENIED** in part. The motion is granted as to the following claims: Title VII, ADEA, ADA disparate treatment relating to Gula's termination, CFEPA discrimination based on age, sex, and national origin, and CFEPA disability discrimination relating to Gula's termination.

The motion is denied, and the case will continue, as to the following: ADA and CFEPA disparate treatment claims relating to the unwanted reduction in Gula's work hours, and ADA and CFEPA failure to accommodate claims. All of these claims relate to the time period between June 20, 2011, and August 26, 2011.

SO ORDERED this   8th   day of September,  2015.

_____
      /s/ DJS
            Dominic J. Squatrito
            United States District Judge

-25-